May it please the court. This case concerns allegations of professional negligence against Allstate's captive insurance agent Mike Baldwin. The case went to trial. Michelle Fanucci lost that trial due to two evidentiary rulings that were made that were devastating to the Fanucci case. Well, let me ask you a question to sort of get down to the mediation. Assume that referring to the mediation is an error and that that testimony should not have been admitted. Where in that testimony or where is there any reference to any comment that's prejudicial to the plaintiff other than the fact that there was a mediation? Yes, Your Honor. The prejudice was this. The testimony, Judge Chen made it clear that he considered the case to be about the negligent misrepresentation claim only. And it was a credibility battle between Mr. Fanucci and Mr. Baldwin specifically about whether or not umbrella coverage with uninsured or underinsured motorist coverage was promised. And Mr. Fanucci testified at the time of trial without objection that when he discovered either an arbitration or mediation that his umbrella policy had no underinsured motorist coverage. He was shocked. He was devastated. And so was his wife. In order to impeach Mr. Fanucci's credibility, Allstate's counsel was called as a trial witness who testified over Fanucci's objection that Mr. Fanucci was not devastated. He was not surprised. He said absolutely nothing at mediation when Allstate informed Mr. Fanucci that the umbrella policy provided no coverage. What page is that in the transcript? He was informed for the first time in the mediation session itself. His testimony was, and I'll find the reference to the page, I believe his testimony was that he first discovered the gap in coverage either at mediation or arbitration. He couldn't remember which one it was. And then Allstate's attorney was called at the time of trial. And then he said he was shocked and devastated and so forth when he discovered this gap in coverage. And Allstate's attorney was allowed to testify. All right. Counsel, I've got a question for you, but I'll wait until you've given Judge Reinhart the page that he's waiting for. All right. See if I can find it here. I read the transcript and I looked for something like that and I certainly didn't see it and I must have missed it. Well, I'm not sure that I made an adequate, I don't think it's Justice Reinhart, I don't think it's your fault I'm trying to find this in my opening brief and I don't see the specific page reference. So let me see if it's in the reply. Well, I've got the transcript of the trial and I didn't find it in the transcript, but maybe we ought to let you proceed while you're waiting for your rebuttal. I will look for the exact citation and if I'm unable to find it, I ask for leave to send a letter to the court identifying the specific pages. Yeah, I think it could be covered in a 28-J type letter, if that's necessary. But you might find it while you're waiting to do rebuttal. Let me get my question on deck at least. To me, in terms of general trial practice, it seems strange to say that Mr. Finucci could testify about hearing something or something being said at the mediation and that that would not make it permissible for the other side to present evidence about what was said at the mediation. And I realize California has a very strong common law rule about no implied waivers on this rule about keeping mediation out, but still if there's anything to the idea that you can't open the door to something and then say it's only open for me, it's not open for my opponent, that seems like a problem with that issue. Justice Gould, I would agree with you. Before the decision in Simmons v. Gaderi by the California Supreme Court, and again the principle was reaffirmed recently by the California Supreme Court in Cassell v. Wasserman, Condon, and Castleman, no implied waivers exist under the statutory scheme. Equitable estoppel principles do not apply. The facts in Simmons v. Gaderi are similar. The party who objected opened the door, introduced evidence of statements made in mediation during the discovery phase of the case for three years without objection, and then showed up at trial having made representations about what occurred and did not occur at mediation, and then objected at the time of trial to introduction of that evidence, and again it was argued that there was an implied waiver of the mediation privilege, and the California Supreme Court didn't buy it. They said under the statutory scheme as written, there is no implied waiver. There is no equitable estoppel. Are they talking about implied waiver from what was said in the depositions or discovery wouldn't waive the privilege at trial? Did they go as far as this case and say that party A can testify at trial about this or that was said at mediation, and that's not a waiver that would permit party B to respond? I think the California Supreme Court is quite clear that there are no waivers except those waivers which are set forth in California Evidence Code section 1122, and unless the requirements of 1122 are met, which requires either an express written waiver by the parties or an oral agreement at court by both sides that the mediation privilege is waived, then there is no implied waiver. There is no equitable estoppel. What about due process? Just in a commonsensical way, it just seems like it's totally unfair. If Mr. Fenucci can give a version of what happened at the mediation, but the insurance company is not able to respond to that, and when his version goes to the trier of fact. The court dealt with a due process issue in Simmons v. Gaderi and said that this kind of unfairness that you're addressing, Justice Gould, does not give rise to due process concerns. There are overriding public policy reasons why the legislature adopted strict rules of confidentiality, and it's not enough that one party has offered into evidence statements made at the mediation. And by the way, Mr. Fenucci did not intentionally offer statements made at mediation. What he said at trial was, I learned either at mediation or at arbitration. He wasn't sure. He wasn't attempting deliberately to put into evidence statements made at mediation. It was merely, this is what I learned. Okay, thank you, counsel. The other issue is that Judge Chen treated the case as if there was only a fifth cause of action for negligent misrepresentation, that the case was solely about whether a specific representation was made by the agent. Yes, your umbrella coverage does provide coverage for uninsured motorist coverage. But the complaint alleges affirmatively that Mr. Baldwin, the Allstate agent, failed to disclose to Mr. Fenucci that his umbrella policy of $1 million was not going to provide any coverage to his family for first-party injuries. There was a claim for general professional negligence in the fourth cause of action and negligent misrepresentation in the fifth cause of action. Yes, the complaint could have been drawn with more specificity, and yes, the complaint was somewhat ambiguous. But those ambiguities were clarified prior to trial when expert reports were exchanged pursuant to Rule 26, and Fenucci's expert gave a report saying that if Baldwin's story is believed and Baldwin acknowledged that he sold the policy without saying anything to Mr. Fenucci, oh, this umbrella policy is not going to cover you for uninsured motorist coverage, that that is a violation of the standard of care because experts on insurance. Let me just stop you for a minute. I was just looking at your brief. The headings I see on your brief both have to do with the evidentiary questions. Yes, the evidentiary ruling was which made in limine, following colloquy between counsel before trial, Allstate made a motion to exclude the expert opinion testimony of a Mr. Gagin who proffered the opinion that under the standard of care, the Allstate agent should have informed the insured Mr. Fenucci when the umbrella policy was purchased, you know, Mr. Fenucci, this umbrella policy for a million dollars is for liability insurance coverage only. We understand that, you know, you're not going to read the policy, most people don't. You may think that there's a million dollars of coverage for your family. If you want a million dollars of coverage for your family that covers uninsured motorist coverage, you're going to have to go to someone else other than me because Allstate doesn't sell that. Allstate only sells uninsured motorist coverage up to its primary limits, which were at that time $100,000 to $300,000. What Gagin said is that assuming that Mr. Baldwin was silent as he acknowledged and said nothing and did not warn or notify Mr. Fenucci about this gap in coverage, that that's a breach of the standard of care in the industry. And Justice Judge Chen said that's irrelevant. It's irrelevant because this case is strictly about a credibility contest between Mr. Fenucci on the one hand and Mr. Baldwin on the other hand. Did he affirmatively misrepresent to Mr. Fenucci that the umbrella policy provided coverage? Judge Chen was wrong about that. It wasn't exclusively about that credibility issue. The case also concerned claims of general professional negligence. And to the extent that the complaint itself and the fourth cause of action was ambiguous, the ambiguity was clarified before trial and there could not conceivably have been any prejudice to Allstate by allowing it. Counsel, if I could ask you one question. Yes. Was there a pretrial order? And if so, what did it say about whether there was a claim for general professional negligence? There was a pretrial order, Your Honor. And the pretrial order did not specifically state that there was a general claim of professional negligence based on the failure of Mr. Baldwin to notify Mr. Fenucci of the gap in coverage. Well, I'm not sure what the latest word in our law is, but at least when I was practicing law, there used to be quite a bit of precedent that said that when a pretrial order was entered, then the complaint, the pleadings of the complaint would pass out of the case and the allegations of the pretrial order would be controlled. I'm aware of that. So why doesn't that render not an abuse of discretion? The evidence ruling by the district court judge on the expert who wanted to testify on an issue that was not framed in the pretrial order as being an issue for trial. I think the pretrial order is not definitive on that issue. I don't have the exact language. I know that the pretrial order was included in the supplementary excerpts of record from Allstate, and I will acknowledge to you that the pretrial order does not specifically identify this theory of liability. I think the federal rules of civil procedure provide maybe Rule 16, that the issues to be tried are framed in the pretrial comments order and supersede any allegations in the pleadings. There may be a local court rule to that effect also, but I'm not sure on this. I don't dispute that, and I recognize that this is certainly a problem for us, but I would say this, that having alerted the court to the Rule 26 statement and counsel having argued the issue in limine prior to trial, the appropriate remedy would have been to modify or amend the pretrial order, and I agree that counsel did not make such a request on the record. There's a pretty high standard for modifying those orders, too. Isn't there something like a manifest necessity or extraordinary? You know, it's not the usual kind of thing. That must be done. There certainly has to be a showing of good cause, and I believe that there is one other reason that it should have been modified when I'm saying that there was no prejudice. Not only do we have the Rule 26 report, which specifically identified this as a theory of liability, you have a stipulated jury instruction both sides agree to, which told the jury that Allstate would be liable if Mr. Baldwin held himself out as an expert, which he did, and he was the one who advised Mr. Fenucci about how to carry out his plan, which he did. Mr. Baldwin was an adjunct professor, and he taught other Allstate agents about how to handle casualty and property loss claims, and he was the one who told Mr. Fenucci that he should reduce his primary limits and get umbrella coverage to meet his needs. That's all I have at this time, and I'll look on the record to find that reference to the testimony. I just have one question. The record is a little uncertain as to whether the disclosure of surprise by Mr. Fenucci occurred at the mediation or at the arbitration. Now, any statements or actions at the arbitration were not privileged. The privilege applies only to mediation. Is that the state of the record? Yes. I believe his testimony was he wasn't sure whether he found out at arbitration or mediation, and Allstate's counsel was called to say that the disclosure was made at mediation. An objection was made to the evidence. The objection was overruled based upon the implied waiver doctrine. Well, what would be the prejudice of that if Mr. Fenucci said that he was told at either arbitration or mediation and he said I was told at mediation? There would be no prejudice if that's all it went to, but they went further. And over objection, they were allowed to testify that when Mr. Fenucci was told there was no coverage under the umbrella policy of mediation, he didn't say anything about it. He didn't express any surprise. He didn't express any shock. And he didn't push back for another two or three years. Yes. So the point was that Allstate was trying to make that Mr. Fenucci wasn't surprised. He knew all along that his umbrella policy did not provide coverage for uninsured motorist coverage, and he was manufacturing all of this evidence of surprise. I understand that, and that's why I wanted to know where in the testimony. I'll find it. All right. Maybe you will. Okay. I'll find it hopefully in the next couple of days. Thank you. May it please the Court? My name is Michael Barnes from S.N.R. Denton. I represent the dependent and appellee Allstate Insurance Company. I'm able to say that this will be the only case on the calendar this morning that doesn't involve any sort of sexual impropriety, so I think we can all breathe a sigh of relief over that. There are two words that are critical and I would say dispositive with respect to this appeal. Those words are abuse and discretion. We've all agreed that the appeal in this case is subject to an abuse of discretion standard, and of course that is the most deferential standard known to the law. And this case shows why a deferential standard is appropriate. Well, an abuse of discretion is also an error of law. That's correct, Your Honor. And the question is, is it an error of law to allow testimony about the mediation? That's correct. And let me get right to that point since you brought it up, Your Honor. For the points that have been mentioned, it was manifestly not an error of law. First of all, a point that probably was not laid out in the briefs as well as it could have been is simply that I'm not sure that the mediation confidentiality statute would even apply here because the statute applies to statements made or admissions made in a mediation. And as Mr. Soter made quite clear this morning and in his brief, there was no statement made by Mr. Fenucci. The testimony that's in question was somebody's description of how Mr. Fenucci reacted. It could be argued to be an implied statement based on conduct, though, and isn't that the way it was presented? He wasn't surprised, so therefore he didn't have that expectation. That's certainly one facet of it, Your Honor. That's correct. But what Mr. Goodman testified to was about a statement not made. Right, I get it. Well, look, let me try to get to the heart of this. This is like a typical case, like a lot of them. Each side has some problems, at least just speaking as one judge. It seems to me Mr. Fenucci's got a big problem on the non-admission of the expert testimony because of the pretrial order. But on the other hand, it seems to me Allstate has a significant problem with this mediation testimony because you've got to either say the statute didn't apply, or if it did apply, it's somehow waived, but maybe the California precedent says it can't be waived, or you've got to say there's some exception, or there's no prejudice. So what's the line of argument as to your position on the mediation beyond that it doesn't apply? Assume for a moment it does apply, then what's your position on due process or exceptions or waiver or prejudice? Let me address both of those, Your Honor. Thank you. If this were a statement within the contemplation of the mediation statute, first of all, the plaintiff did open the door, as you noted a moment ago. It's basic trial practice that a party cannot open the door to a communication and then slam the door shut to prevent cross-examination about it. I would assert that that was an express waiver by the plaintiff by asking questions about this very topic, and it was only when I started my cross-examination, I guess, or brought in another witness to impeach Mr. Fenucci that it became a problem. The Simmons case that Mr. Soter has cited here is not applicable. That was a case where the defendant objected to the mediation privilege information, and the plaintiff was allowed to introduce it anyway over the defendant's objection. It was not a situation where the party that later objected the testimony came back and had actually started that line of questioning about the mediation and then only changed her mind later. And finally, I believe the case of Reneker v. Superior Court is still good law. That was the case that held that the mediation privilege is subject to the due process concerns that have been mentioned in the court today, and that is the constitutional right of cross-examination and the right to impeach witnesses. So it's not quite as black and white as Cohen's counsel may have indicated. The equally important principle, which we have to address as well, is that of prejudice. And as we have discussed already today, the point of the testimony about Mr. Fenucci's reaction to learning that he didn't have this excess umbrella coverage is, again, to show, to undermine his credibility because after learning this, he didn't say anything to all states. Why isn't that prejudicial if the testimony is that he learned then and he didn't express any shock or devastation? The reason is this, Your Honor. The date of the mediation or arbitration, we're not really sure which it was, was January of 2002. Our argument was he couldn't have been that upset about it because he didn't say anything to all states until December of 2005. I know that's your argument. Your argument is that in the mediation, he didn't express any shock or devastation, and that's designed to undermine his argument that he was shocked and devastated. Why isn't that prejudicial to him? I hadn't completed the thought yet, Your Honor, and that is the reason it's not prejudicial is that it's undisputed and it's in the record, I believe, that Mr. Fenucci was told in March of 2002, in writing, two months after the mediation, was told in writing that there was no coverage under the umbrella policy for uninsured motorist risks, and still he waited until December of 2005 to say anything to all states. So my point was if the jury felt that he wasn't really that outraged, there wasn't much of a difference in the fact that he certainly knew 43 months before saying anything that there was no coverage. Did he also know 45 months? Why did he have to say anything? I mean, he won the arbitration, didn't he? His daughter prevailed in the arbitration, correct, and that was in, I forget the actual date, but he didn't say anything until, I believe it was, well, I don't have the dates in front of me, but the point was... When did he first file a suit? He filed this lawsuit, I believe, in early 2008 after the conclusion of a court of appeal proceeding arising out of the uninsured motorist arbitration. Was there a mediation and an arbitration, or just one or the other? My recollection, Your Honor, was that there were both. There was a mediation in the underlying uninsured motorist, or underinsured motorist arbitration that was unsuccessful, and then it went to formal arbitration. All right. You said first there was a mediation that was unsuccessful. Correct. And then there was an arbitration? Correct. And what was the result of the arbitration? The arbitration was that Ms. Fenucci, the appellant, was awarded initially damages of about $1.4 million. That sum was reduced to the limit of the policy down to $150,000. Then that went up to the California Court of Appeal, and once that proceeding was affirmed on appeal, the instant action was filed. Going back to the point of the effect of this testimony, Your Honor, the important point was this. Mr. Fenucci had testified, and indeed had stated in the complaint, that they were devastated and outraged when they found out they didn't have this excess underinsured motorist coverage. It's undisputed that they knew that by at least March of 2002, because that's in writing in a letter from me. So still they waited almost four years after that, and that would be relevant, and certainly it was something that the jury would have considered. I don't understand what you mean that they should have expressed this outrage. He says he was outraged. Why was he required to do something about that? He was proceeding on other – he wasn't. I'm sorry, Your Honor. There was an arbitration scheduled when you got the letter? Yes. And they won the arbitration, and he didn't express outrage at the arbitration? What is he supposed to do when he's – Your Honor, this case didn't turn on whether Mr. Fenucci was outraged at any particular point in time. This was part of an entire panoply of evidence that went into the record over the period of a four-day trial that turned exclusively on the credibility of two people's testimony. The point of the outrage or the shock, it wasn't a dispositive point in the case. It was one of the episodes wherein Mr. Fenucci's credibility was tested because he had stated to various people he was shocked and outraged when he found out he had been lied to by his good friend, Mr. Baldwin, and I simply argued to the jury that he didn't seem very shocked and outraged because he didn't say anything about it for almost four years. He wasn't under any obligation to report it. It just went to his credibility when he hadn't expressed any such outrage to anybody at the time. That was the point. Well, you say he didn't express any outrage at the mediation, but that's what, assuming, because we're talking about prejudice, assuming that he didn't, that's something that is not supposed to be admitted into evidence. I mean, if we assume that, then you're trying to undermine his credibility by using something that occurred in the mediation, and as someone said earlier, this was a case about credibility. I don't think it was that simple. There was a substantial amount of evidence casting doubt on Mr. Fenucci's story, and we had a very lengthy timeline, and our argument was that this story was not credible because it did not come out until December of 2005, and there were many, many opportunities for Mr. Fenucci to say to anybody, including his good friend, Mr. Baldwin, the Allstate agent, gee, Mike, I thought I had coverage for this, and now I found out I didn't. That conversation didn't occur, and so we pointed out a number of circumstances in which a normal person probably would have said something to the effect, gee, you lied to me, my daughter's underinsured, I feel really disappointed in that, Mike, and that didn't occur, as I say, for many, many years after this. So the case didn't turn on something that was said or not said. Well, we don't know what he said in mediation. I beg your pardon, Your Honor? We don't know what he said in mediation to his good friend, Mike. Well, his good friend, Mike, wasn't there. The testimony was he heard this statement at some time in January of 2002. That's the only point. They could have been at the mediation, they could have been at the Starbucks, they could have been at the beach. The point of the mediation was to affix the time at which he first learned this, and it was documented in writing not two months later, and that was the whole point of it. It was a temporal milestone. Well, that's why you brought Mr. Goodman to testify for the temporal milestone? Your brief says he simply confirmed that Mr. Fenucci expressed no such shock or outrage at the mediation, undermining his later claim that he was devastated by the news. It wasn't simply to establish the date. Well, I didn't put the entire trial transcript into the record. I didn't know what was going to be needed. The issue of appeal was whether the statement should have come in, and that's why we focused on that aspect of Mr. Goodman's testimony. There was plenty of other testimony that cast doubt on the credibility. Where does the record of the mediation show devastation? That's a pretty harsh word. Your position is he showed no devastation or being upset when he first learned at the mediation that there was no coverage. But the record is silent. I've got the transcript here. I don't see any comment by counsel. Why are you so upset, Mr. Fenucci? Do you want a minute to recover from your apparent shock? There's nothing in the record that's silent. And so you infer from the fact he didn't go into certain histronics that he wasn't shocked? There is no record that he was devastated. Mr. Goodman was asked to testify as to what Mr. Fenucci's reaction was upon hearing this news, and he said he had no reaction at all. He didn't look at all surprised. So there wasn't any testimony that he was shocked or devastated. But again, the point was simply to affix a point in time to show that at various occasions Mr. Fenucci was told that there was no coverage, and at each of these occasions when a normal person would have spoken up and said, gee, I'm really disappointed, he did none of that for years. That was the only point of it. Okay, thank you, counsel. Thank you, Your Honor. All right, we'll give you one minute and rebuttal. Your Honors, I have found the relevant citations there in pages three to four of our library, and specifically the reference to Mr. Fenucci expressing no disagreement with all states' position that the mediation can be found at reporters' transcript pages 399 to 401. And with regard to Mr. Barnes' representation to the court, this wasn't prejudicial because Mr. Fenucci didn't respond for another three years. That was acknowledged by the all-states attorney on cross-examination not to be true. On cross-examination, he admitted at reporters' transcript pages 406 to 408 that in the year 2002, shortly after the mediation, Mr. Fenucci did in fact complain in writing about the gap in coverage. So I just want to repeat that I think a careful reading of Simmons v. Goderi is quite clear that judicial exceptions to the mediation privilege are no longer allowed in California. But you concede there's a due process exception? Yes, there is a due process exception, but the due process clause is not invoked here. It's not just on a general – what they've said in Simmons v. Goderi, general principles of equity and fairness do not give rise to a due process complaint. It would only give rise to a due process issue if the result is absurd or the result is so ridiculously unfair that we can't apply the mediation. Well, why is it – I'm not saying it's ridiculously unfair. That's sort of a characterization. But why isn't it unfair to say that one party can testify about what happened in a mediation, but the other party cannot controvert their testimony? Isn't that exactly what the court was dealing with in Simmons v. Goderi, where the defendant, doctor, submitted declarations to the court that he did not consent to a settlement that was reached at mediation, offered that evidence up to the court, and then at the time of trial said, keep all of that out, no one gets to testify about what goes on at the mediation. But still at trial he's objecting to the mediation stuff coming in, whereas in this case at trial Mr. Fenucci is testifying about what happened in the mediation. So I might be missing something, and I'll think about it some more. Justice Gould, I don't know that you're missing something, but I know that there was a very detailed discussion in the Simmons case about the due process concerns of the court. And my reading of that case is that mere unfairness to one side or opening the door does not meet the due process test. And I think the court dispensed with the due process argument in Simmons. Has anybody asked that that issue, the issue of whether there's a due process violation, be certified to the state Supreme Court? I mean, could that issue be certified, or is it already covered in their ruling? I think it's already covered in the ruling. I cannot recall the specific. Just one moment here. I note that the court said in conclusion that the legislative history of the mediation confidentiality statutes as a whole reflects a desire that section 1115 be strictly followed in the interest of efficiency. Chief, thank you. Thank you. Thank you, counsel. Case just argued will be submitted. The court will stand in recess for the day.
judges: Timlin, Reinhardt, Gould